# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **ANGELIA I.  STEWART,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.  5:09-CV-2118-RDP** |
| | } | |
| **MICHAEL J. ASTRUE, Commissioner** | } | |
| **of Social Security,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OF DECISION

Plaintiff Angelia I. Stewart brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her application for disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI").  *See* 42 U.S.C. §§ 405(g), 1383(c).  For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed.

## I.   PROCEDURAL HISTORY

Plaintiff filed her applications for a period of disability, DIB, and for SSI benefits under Titles II and XVI of the Act on December 12, 2006, alleging a disability onset date of December 1, 2006.[1]  (Tr. 68-79).  Plaintiff's initial application was denied.  (Tr. 45-50).  Plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ").  (Tr. 58, 62-66).  A hearing was held before ALJ Patrick R. Digby on November 21, 2008.  (Tr. 19-41).  In his December 17, 2008 decision, the ALJ determined Plaintiff suffers from the following severe combination of

---

[1] On November 21, 2008, Plaintiff amended her disability onset date from May 1, 2002 to December 1, 2006.  (Tr. 11, 76, 149).  Plaintiff filed a previous application on June 8, 2006 which was subsequently denied, accounting for her change in onset date.  (Tr. 84).

impairments: obesity, mild degenerative disc disease of the right knee, and depression. (Tr. 13-18). The ALJ determined Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in the Act and that Plaintiff had the residual functional capacity ("RFC") to perform light work with some limitations. (Tr. 13-15). On August 21, 2009, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner and, therefore, a proper subject of this court's review. (Tr. 1-5). The ALJ determined that Plaintiff's insured status for Title II benefits expired March 31, 2006. (Tr. 11, 46). Accordingly, Plaintiff concedes that because she amended her alleged onset date of disability to December 1, 2006–a date which was after her date last insured for Title II disability benefits–her SSI application, filed under Title XVI, is the only one at issue at this time. (Pl.'s Mem. at 1).

Plaintiff was born July 7, 1965, and has a sixth grade education. (Tr. 24, 26, 27, 45, 68). At the time of filing, Plaintiff was living with her twenty-two year-old son, and fourteen year-old daughter.[2]  (Tr. 24). Plaintiff is five feet three inches tall and weighs 206 pounds. (Tr. 29). Plaintiff's relevant past work experience includes: box factory assembler, classified as a light unskilled job; waitress, classified as a light job, lower semi-skilled; and short order cook, classified as a light job, very low semi-skilled. (Tr. 33-34). Plaintiff alleges the following impairments: post traumatic stress disorder ("PTSD"), major depression, status post two surgeries from the right knee with chronic pain and osteoarthritis of the right knee; borderline intellectual functioning; and status post cervical cancer. (Pl. Mem. at 4).

---

[2]The record is not clear with whom Plaintiff lives. *See* Tr. 24, 97. Plaintiff's mother claims she lives with her but at the hearing, Plaintiff claimed to live only with her son and daughter. (Tr. 24).

Plaintiff has undergone the following surgeries:  two knee surgeries on her right knee; a grandular cyst removed off her right wrist; a ventral hernia repair; an appendectomy; and cancer surgery.  (Tr. 31-32).  Plaintiff testified her most disabling condition is her knee and that her right side is affected with degenerative joint disease, osteoarthritis, and rheumatoid arthritis.  (Tr. 32). Plaintiff claims her pain began in 2001 and first began affecting her activities in 2002.  (Tr. 109-10). During the hearing before the ALJ, Plaintiff rated her pain as an eight.  (Tr. 30).  Plaintiff contends that her pain is located in her right knee and back and is exacerbated by walking, standing, or sitting. (Tr. 109-10).  Plaintiff uses a cane, wears a knee brace, and uses a wheel chair occasionally.[3]  (Tr. 31-32 103-05, 110).  She claims to be unable to work because she is in so much pain and is unable stand, sit, or walk for long periods.  (Tr. 27).  Plaintiff also claims she struggles with anger management and depression.  (*Id.*).  Plaintiff attempted to commit suicide in May 2008.  (Tr. 31). Plaintiff claims to suffer from worsening depression, difficulty sleeping and concentrating, and panic attacks.  (Tr. 31, 105, 107, 112).  She does not socialize and claims her medication makes her nervous and irritable.  (Tr. 28-31, 105, 107, 110, 112, 114-15).  A Daily Activities Questionnaire completed by Plaintiff's mother refers to Plaintiff's pain and depression, as well as her social problems.  (Tr. 97-99).

Plaintiff's daily routine is as follows: she awakes around 7:00 a.m.; helps her mother with breakfast; gets her daughter ready for school; naps; watches TV; showers; and reads or listens to the radio. (Tr. 102).  Plaintiff's son assists with grocery shopping and preparing her daughter for school. (Tr. 25).  Plaintiff can cook, shop, and do light housekeeping and household chores, with assistance. (Tr. 98, 112-13).  She has some difficulty grooming.  (Tr. 103, 112).  Plaintiff can bathe, feed herself,

---

[3]The record is void of any documentation where a doctor prescribed Plaintiff a wheel chair.

brush her teeth, and open a door with a doorknob, although with some pain.  (Tr. 25).  Plaintiff cannot vacuum or do any outdoor work.  (Tr. 105).  Her daughter helps with laundry and making the beds.  (Tr. 104).  Plaintiff can fold clothes while sitting, dust waist high surfaces, and do laundry. (Tr. 113).  Plaintiff rarely leaves her home, but on good days will drive herself or go somewhere with her family.  (Tr. 114).  At the hearing, Plaintiff testified she cannot drive because she cannot sit long enough.   (Tr. 25-26).   Alternatively, in her Physical Activities of Daily Living Questionnaire, Plaintiff claims she can drive, if absolutely necessary, but her pain medications sometimes prohibit it.  (Tr. 106).  Plaintiff can sit no more than twenty to thirty minutes, claims to be unable to stand for ten minutes, can walk from the bedroom to the bathroom to the living room, and lays down about once every hour.  (Tr. 26, 30, 106).  She can perform most activities for only fifteen minutes before she must take a break and claims to be limited to lifting no more than ten pounds.  (Tr. 104, 107).

On December 10, 2003, Plaintiff was admitted to Cullman Regional Medical Center for a total abdominal hysterectomy.  (Tr. 226).  Plaintiff's history of abnormal pap smears was noted and a biopsy revealed that she had insitu carcinoma.  (Tr. 224).  She underwent surgery and did well post-operatively.  (Tr. 224, 228-29).  Plaintiff admits that "cervical cancer is not an issue and does not keep her from working."  (Tr. 142).

In December 2003, Plaintiff was diagnosed with symptomatic reducible right upper quadrant ventral incisional hernia and symptomatic ganglion cyst right wrist.  (Tr. 234).  On January 23, 2004, Plaintiff underwent an open repair of ventral incisional hernia right upper quadrant abdomen and resection ganglion cyst right wrist.  (Tr. 217-19).  Her "postoperative course was good."  (Tr. 217).

Dr. Steven Fuller of the Alabama Orthopedic Institute treated Plaintiff from March 10, 2004 through June 28, 2004.  (Tr. 160-70).  Dr. Fuller's diagnosis was a probable medial meniscus tear,

4

consistent with Plaintiff's December 3, 2003 MRI results and a right knee arthroscopy performed March 23, 2004. (Tr. 161-62, 213). On March 10, 2004, Plaintiff complained of right knee pain beginning in April 2003. (Tr. 160). Plaintiff returned March 31, April 7, June 4, and June 28, 2004 complaining of pain in her right knee and was advised to decrease activity and prescribed to physical therapy. (Tr. 162-69). Dr. Fuller injected Kenalog into Plaintiff's right knee, as well as prescribed that she wear a right knee hinged brace. (Tr. 166). Plaintiff also reported that another doctor told her that her weight contributed to her condition. (Tr. 168). On June 28, 2004, Plaintiff was diagnosed with right knee osteoarthritis and was to continue conservative treatment because a knee replacement at her age would be too risky. (Tr. 168-69).

On February 21 and November 21, 2002, and January 24 and January 31, 2005, Plaintiff visited Cullman Area Mental Health Authority complaining of anxiety, depression, and some sleep disturbances. (Tr. 172-73, 177-78, 185-87, 196). During her January 24, 2005 visit, Plaintiff did not meet the criteria for "seriously mentally ill," but admitted to having a substance abuse history, as well as to be suffering from depression and grief. (Tr. 180, 173).

Plaintiff was seen by Dr. David Dueland on February 1, August 10, August 15, and August 24, 2005, and Plaintiff's moderate degenerative joint disease and moderate degenerative disk disease were noted. (Tr. 203, 260-62). On August 15, 2005, Plaintiff was diagnosed with right knee synovitis, medial meniscal tear, chrondromalacia patella, trochela, medial femoral codyle, and multiple loose bodies. (Tr. 203). A right knee arthroscopy, medical meniscectomy, extensive synovectomy, removal of loose bodies, biopsy of patella, trochlea and medial femoral condyle were performed. (*Id.*). On August 24, 2005, Plaintiff was doing well. (Tr. 260).

5

Dr. Jack L. Bentley, Ph.D., performed a Consultative Examination Report on February 14, 2007, noting Plaintiff's history of uterine cancer, hernia repair, appendectomy, cholescystecomy, osteoarthritis, acute asthmatic bronchitis, as well as two surgical repairs of her right knee. (Tr. 297-300). Dr. Bentley noted Plaintiff's history of sexual abuse which caused her to suffer from PTSD. (*Id.*). Reportedly, neither Lexapro nor Xanax improved her psychiatric difficulties. (Tr. 297). Plaintiff continued to experience frequent flashbacks, nightmares, and crying spells, and suffered from moodiness, dysphoric mood, excessive anxiety, occasional panic attacks, anhedonia, insomnia, social withdraw, and a lack of self-esteem. (Tr. 297-99). Dr. Bentley reported that Plaintiff had not abused drugs in the last eighteen months. (Tr. 298). She was diagnosed along Axis I with polysubstance abuse, in apparent remission, major depression recurrent moderate with anxiety, PTSD, and nicotine dependence. (Tr. 299). She was diagnosed along Axis II with borderline intellectual functioning, Axis III with osteoarthritis, asthmatic bronchitis, status and post hernia repair, left knee surgery. (*Id.*). Her prognosis was favorable for her present level of functioning. (Tr. 300).

On February 16, 2007, a Psychiatric Review Technique and Mental RFC Assessment were completed by Gordon J. Rankart. (Tr. 302-32). Dr. Rankart found Plaintiff to have the medically determinable impairments of major depression–moderate, PTSD, and polysubstance abuse–remission. (Tr. 305, 307, 310). Plaintiff was found to have mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistency, or pace. (Tr. 312). Plaintiff has moderate limitations on her ability to understand and remember detailed instructions, to carry out detailed instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule,

6

to maintain regular attendance, to be punctual within customary tolerances, to interact appropriately with the general public, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and to respond appropriately to changes in the work setting. (Tr. 330-33). Otherwise, Plaintiff was not significantly limited. (*Id.*). The overall evidence indicated mild to moderate mental limitations for the workplace. (Tr. 314).

Dr. Brumleve consistently treated Plaintiff from July 2002 through June 2007 for arthritis, bursitis, sinusitis, bronchitis, anxiety/depression, obesity, cervical cancer, post-menopausal syndrome, edema, and fatigue. (Tr. 268-95, 346-47). Dr. Brumleve consistently prescribed Naprosyn 500 mg and Lortab 7.5 mg for arthritis, Lexapro 10 mg and Xanax 5 mg for anxiety and depression, Didrex 50 mg for obesity, hydrochlorothizide (HCTZ) for Edema, and B-12 shots for fatigue. (*Id.*). During some visits, Plaintiff complained of knee and arthritis pain and fatigue. (*See, e.g.,* Tr. 269).

Dr. Brumleve completed a Physical Capacities Evaluation ("PCE"), Clinical Assessment of Pain ("CAP"), Clinical Assessment of Fatigue/Weakness ("CAFW"), and Supplemental Questionnaire as to Residual Functional Capacity ("Supplemental Questionnaire"). (Tr. 339-45). In Plaintiff's PCE, Dr. Brumleve limited her to: lifting and/or carrying twenty pounds occasionally or ten pounds frequently; sitting for twenty minutes; and standing and walking for thirty minutes in an eight hour day. (Tr. 339). He opined Plaintiff could occasionally perform pushing, pulling and stooping movements, reaching and bending, but could never perform climbing, nor gross or fine manipulation movements. (*Id.*). In her CAP, Dr. Brumleve opined that pain was "present to such an extent as to be distracting to adequate performance of daily activities or work," and that physical activity, such as walking, standing, bending, stooping, and moving of extremities will greatly

7

increase her pain "to such a degree as to cause distraction from tasks or total abandonment of tasks." (Tr. 340). In Plaintiff's CAFW, Dr. Brumleve opined that fatigue/weakness was "present to such an extent as to negatively affect adequate performance of daily activities or work," and that physical activity "greatly increased fatigue/weakness to such a degree as to cause total abandonment of tasks." (Tr. 342-43). In Plaintiff's Supplemental Questionnaire, the following were described as marked limitations: estimated degree of difficulty in maintaining social functioning; estimated deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner; and estimated impairment of ability to respond to customary work pressures. (Tr. 344). The following described Plaintiff's marked limitation in her ability to do the following on a sustained basis in a routine work setting: understand, carry out and remember instructions; respond appropriately to supervision; and perform simple tasks. (Tr. 345). Plaintiff's ability to respond appropriately to co-workers and to perform repetitive tasks were categorized as extreme limitations in the work setting. (*Id.*).

In her CAP, Dr. Brumleve opined the side effects of Plaintiff's medications can be expected to be severe and to limit effectiveness due to distraction, inattention, and drowsiness. (Tr. 341). In her Supplemental Questionnaire, he opined Plaintiff's prescription Xanax could make her drowsy, Lortab might make her nervous or weak, and the steroid shot could have the effect of not allowing her to function at all. (Tr. 345). In her CAFW, Dr. Brumleve opined that some side effects from Plaintiff's prescribed medications may be present, but not to such a degree as to create serious problems in most instances. (Tr. 343). Dr. Brumleve further opined Plaintiff has an underlying medical condition consistent with the pain she experiences, as well as the fatigue/weakness she

experiences. (Tr. 341, 343). According to her Supplemental Questionnaire, Plaintiff's estimated restrictions of activities of daily living were moderate. (Tr. 344).

Plaintiff was treated on June 3 and July 7, 2008 by Dr. Azar and was diagnosed along Axis I with major depression, of a moderate degree, history of polysubstance dependence, PTSD, Axis II hypertension, Axis IV grief, marital and family conflicts, and a GAF score of 45. (Tr. 357-59).

## II.    ALJ DECISION

Determination of disability under the Act requires a five-step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's RFC can meet the physical and mental demands of past work. The claimant's RFC is what the claimant can do despite her impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevents the performance of any other work. In making this final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and RFC are the same as the criteria listed in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will not review the claim any further.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform h[er] former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982)

(other citations omitted).   Once a claimant shows that she can no longer perform her past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment."  *Id.*

The ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date of December 1, 2006.  (Tr. 13, Finding No. 2).  Based on the evidence presented, the ALJ found Plaintiff has the following severe impairments:  obesity, mild degenerative disc disease of the right knee, and depression.  (Tr. 13, Finding No. 3).  The ALJ also found that these impairments, individually or in combination, did not meet or equal one of the listed impairments in the Act.  (Tr. 14, Finding No. 4).  The ALJ determined Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567 and 416.967(b) except Plaintiff "would need a sit stand option, can stand and walk and sit six of eight hours, no limitations in pushing and pulling and use of hand controls, occasional foot controls, no ladders, ropes, scaffolds, avoid cold, heat, humidity, no work around heights and hazardous machinery."  (Tr. 15, Finding No. 5).  Additionally, "[d]ue to depression, [Plaintiff] is limited to jobs with simple instructions, casual contact with public and coworkers and supervisors and gradual changes in the work place."  (Tr. 15, Finding No. 5).  The ALJ then determined Plaintiff is capable of performing past relevant work as a box assembler or fast food worker, and thus, had not been under a disability as defined by the Act from May 1, 2002 through December 17, 2008.  (Tr. 18 Finding No. 6).

## III.   PLAINTIFF'S ARGUMENT FOR REMAND OR REVERSAL

Plaintiff alleges that the ALJ failed to accord controlling weight to the opinion of her long-term treating physician and that the ALJ failed to properly consider her non-exertional impairments in his disability determination.  (Pl.'s Mem. at 8).  Specifically, Plaintiff contends that had the ALJ

given proper weight to Dr. Brumleve's opinion, he would have found her to be disabled based upon the Social Security Laws and Regulations. (Pl.'s Mem. at 8). Additionally, Plaintiff submits her non-exertional impairments should have been taken under consideration in combination. (Pl.'s Mem. at 10).

## IV.    STANDARD OF REVIEW

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (*citing Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (*quoting Bloodsworth*, 703 F.2d at 1239) (internal citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in

scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V.   DISCUSSION

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for remand and/or reversal.  For the reasons outlined below, the court finds that the ALJ's decision was based on substantial evidence and that the proper legal standards were applied.

**A.   The ALJ Accorded Proper Weight to the Opinion of Plaintiff's Long-Term Treating Physician.**

A treating physician's opinion must be given substantial weight in determining disability unless good cause is shown to the contrary.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (citing *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997)).  If a treating physician's opinion is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record, it must be given controlling weight.  *See* 20 C.F.R. §§ 404.1527(d)(2), 416(d)(2) (2009).  The Eleventh Circuit has concluded that "good cause" exists for disregarding a treating physician's opinion when the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis,* 125 F.3d at 1440); *see also Crawford*, 363 F.3d at 1159 ("A treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory.") (internal citations omitted).  When not given controlling weight, the court should consider the following factors: the examining relationship, the treatment relationship, length of the treatment relationship,

12

nature and extent of the treatment relationship, whether a medical source supports the relevant opinion, as well as other relevant factors the court may deem necessary.  20 C.F.R. § 404.1527.  The ALJ must articulate specific reasons for the weight given to the treating physicians's medical opinion which must be supported by the evidence of record.  Social Security Ruling (SSR) 96-2p, 1996 WL 374188 (S.S.A.); *see also Phillips*, 357 F.3d at 1241(citing *Lewis,* 125 F.3d at 1440) ("When electing to disregard the opinion of a treating physician the ALJ must clearly articulate its reasons" for doing so.).  The ALJ must "be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  SSR 96-2p, 1996 WL 374188.

The ALJ clearly and sufficiently articulated specific reasons for not according Plaintiff's treating physician's opinion great weight and thoroughly discussed all of Dr. Brumleve's records and forms, including Plaintiff's PCE, CAP, CAFW, and Supplemental Questionnaire.  (Tr. 14, 17, 339-45).  The ALJ's articulated findings comport with the Eleventh Circuit's definition of "good reason."  These reasons included Dr. Brumleve's opinion conflicts with Plaintiff's testimony; the evidence of record does not support Dr. Brumleve's propositions; Dr. Brumleve's opinions were inconsistent with his examinations; and Dr. Brumleve's opinions are internally inconsistent.  (Tr. 14-18).  The ALJ did not accord Dr. Brumleve's opinion regarding Plaintiff's mental capacity controlling weight because it was inconsistent with the opinion of the state agency physician and because Dr. Brumleve is not a specialist.  (*Id.*).  The ALJ did not commit error in refusing to accord Dr. Brumleve's opinions substantial weight.

Dr. Brumleve's opinions are inconsistent with the record and are unsupported by the evidence of record, giving the ALJ good cause to discount Dr. Brumleve's opinion.  *See e.g. Phillips*, 357 F.3d

13

at 1241 (holding good cause exists to disregard a treating physician's opinion when it is not bolstered by the evidence or if it is inconsistent with the physician's own medical records). In Plaintiff's PCE, Dr. Brumleve opined Plaintiff could sit for only twenty minutes in an eight-hour work day and stand for thirty minutes in an eight-hour work day. (Tr. 339). He opined Plaintiff could lift twenty pounds occasionally to ten pounds frequently. (*Id.*). Additionally, it was his opinion Plaintiff could never climb or balance, or perform gross or fine manipulation, but occasionally could push pull, bend, stoop, reach, and operate motor vehicles. (*Id.*). In Plaintiff's CAP, Dr. Brumleve indicated that Plaintiff's pain was present to such an extent as to be distracting from the adequate performance of daily activities or work. (Tr. 340). In Plaintiff's CAFW, Dr. Brumleve indicated that Plaintiff's fatigue/weakness was present to such an extent as to be distracting from the adequate performance of daily activities or work. (Tr. 342-43).

In discounting Dr. Brumleve's opinion, the ALJ properly relied on Dr. Brumleve's failure to support his opinions. *See Phillips,* 357 F.3d at 1241 (finding good cause for disregarding a treating physician's opinion exists if the opinion is not bolstered by the evidence). Dr. Brumleve failed to point to any medical evidence or to indicate how or why he believed Plaintiff would be distracted from work in the future. (Tr. 17, 340-41). The ALJ specifically noted that Dr. Brumleve's March 23, 2007 examination, which coincided with the completion of the forms, does not support his conclusion. (Tr. 17, 347). On March 23, 2007, Plaintiff complained of arthritis pain and fatigue, but Dr. Brumleve found no CVA tenderness, no spinal deformities, and no tenderness. (*Id.*). Plaintiff had a full range of motion without tenderness, edema, inflamation, or stiffness. (*Id.*).

14

Between October 2005 and December 2006[4], Dr. Brumleve consistently indicated Plaintiff's joints had a full range of motion without tenderness, edema, inflamation or stiffness. (Tr. 267-80). Plaintiff complained of arthritis pain or pain in her right knee in October and September 2005, in January, April, July, and September 2006, and in March 2007. (Tr. 269, 272-75, 279-81, 347). She complained of being fatigued in October 2005, January 2006, April 2006, March 2007, and received a B-12 shot for fatigue in December 2005, in January, April, and July 2006, and in March 2007. (Tr. 272-75, 279, 347). Plaintiff never complained that her fatigue was worsening and the severity of her fatigue was not documented. In fact, during her examinations in September and December 2006, Plaintiff denied having any weakness or fatigue. (Tr. 269). The ALJ also specifically referenced Plaintiff's December 2006 examination in which she *denied muscle or joint pain* and had a *full range of motion*. (Tr. 16, 267). Dr. Brumleve's records contained no indication of Plaintiff's functional limitations in terms of her ability to walk, sit, or stand. (Tr. 17). The level of Plaintiff's subjective characterization of her pain was not documented in Dr. Brumleve's records, other than the fact that she complained of pain intermittently. (Tr. 17, 266-96, 346-50). Plaintiff never alleged any functional limitations due to her obesity. (*Id.*).

From October 2005 through present, Plaintiff was given consistent treatment including: Naprosyn 500 mg and Lortab 7.5 mg for her arthritis; Lexapro 10 mg and Xanax 5 mg for her depression; Didrex for her obesity; and hydrochlorothizide (HCTZ) for her edema. (Tr. 267-80, 346-48). Regardless of her complaints, Plaintiff's treatment remained relatively the same throughout Dr. Brumleve's treatment period. As the ALJ noted, if Plaintiff's condition was as severe as Dr.

---

[4]Because Plaintiff's onset date was amended to December 1, 2006, the relevant time period, technically, spans from December 1, 2006 to December 17, 2008.

Brumleve contends, he should have altered her treatment.  Indeed, in his assessment, the ALJ noted that, "[t]he [Plaintiff] in general has not received the type of medical treatment one would expect for an individual claiming to be totally disabled."  (Tr. 17).

The record as a whole does not support Dr. Brumleve's conclusions.  Plaintiff's most recent doctor's visit record from August 2007 indicates a "steady gait in no acute distress."  (Tr. 356).  This description is inconsistent with Dr. Brumleve's conclusions that Plaintiff could not perform any work.   The ALJ additionally discounted Dr. Brumleve's opinion that Plaintiff could only occasionally push or pull because this proposition is not supported by the record. (Tr. 17).  Plaintiff was injured while moving furniture, which would indicate she was not so disabled as to not be able to perform gross manipulations.  (Tr. 353-55).  Finally, Plaintiff's physical examinations are generally relatively unremarkable.   The ALJ found there was little evidence to support Dr. Brumleve's finding. (Tr. 17).

The ALJ also found Dr. Brumleve's opinion of Plaintiff's ability to sit and stand to be inconsistent with her testimony.  (Tr. 17).  Plaintiff rated her pain as an eight and claimed she cannot sit, stand, or walk for long periods of time.  (Tr. 27, 30).  She testified she laid down off and on frequently, about once every hour.  (Tr. 30).  According to her testimony, Plaintiff is able to do household chores, tend to her personal needs, read and watch television.  (Tr. 25, 112).  Plaintiff's testimony and description of her abilities does not comport with Dr. Brumleve's opinion that she can only sit or stand for twenty or thirty minutes.  (Tr. 339).

The ALJ properly relied on the fact that Dr. Brumleve's own opinions are internally inconsistent.  (Tr. 17).  Specifically, Dr. Brumleve's testimony that Plaintiff could perform no gross or fine manipulations directly conflicts with his opinion that Plaintiff could operate a motor vehicle,

which requires at least some gross or fine manipulations.  (Tr. 17, 339).  Dr. Brumleve's opinion

regarding side effects from medication is also internally inconsistent and unsupported by the medical

records.  In Plaintiff's CAP, Dr. Brumleve opined "[d]rug side effects can be expected to be severe

and to limit effectiveness due to distraction, inattention, drowsiness, etc." (Tr. 341).  In her CAFW,

Dr. Brumleve opined that "some side effects may be present, but not to such a degree as to create

serious problems in most instances." (Tr. 343).  In her Supplemental Questionnaire, Dr. Brumleve

opined the side effects Plaintiff might experience were "Xanax-drowsy, Lortab-nervous, weak,

steroid shot-can't function @ all." (Tr. 345).  Plaintiff does not complain of medication side effects

in Dr. Brumleve's records.  It is clear from reading the three reports that Dr. Brumleve has not

formulated a sound and consistent conclusion.

The ALJ also properly discounted Dr. Brumleve's opinion in Plaintiff's Supplemental

Questionnaire regarding her psychiatric impairment–that she had moderate restrictions on activities

of daily living.  (Tr. 344-45).  According to Dr. Brumleve, Plaintiff had:  marked limitations in

maintaining social functioning; would have marked deficiencies of concentration, persistence, or

pace resulting in frequent failure to complete tasks in a timely manner; had marked limitations in her

ability to respond to customary work pressure; had marked limitations in her ability to understand,

carry out and remember instructions in a work setting; in her ability to respond appropriately to

supervision in a work setting; and to perform simple tasks in a work setting.  (Tr. 345).  Dr.

Brumleve opined Plaintiff had extreme limitations in her ability to respond appropriately to co-

workers in a work setting and to perform repetitive tasks in a work setting.  (*Id.*).  However, Dr.

Brumleve is not a specialist but a family physician.  Dr. Brumleve's opinion differed from Jack L.

Bentley, Jr., Ph.D., a consultative psychologist and mental health professional, and therefore, the

ALJ accorded Dr. Brumleve's opinion little weight.  (Tr. 17, 299, 344-45).  The ALJ should generally, "give more weight to the opinion of a specialist about medical issues related to his . . . area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5).  Dr. Bentley's opinion was based on psychiatric tests administered by himself, making his opinion more persuasive.  *See* 20 C.F.R.  § 404.1527(d)(1) (generally more weight is given "to the opinion of a source who has examined [claimant]..."). After examining Plaintiff, Dr. Bentley opined that Plaintiff did not exhibit any impairment in her communication skills, that her tertiary and immediate memory were satisfactory, and that she did not exhibit phobias, obsessions, or unusual behaviors.  (Tr. 298).  She was alert and oriented but did have some insomnia and anxiety.  (Tr. 298-99).  Dr. Bentley's prognoses for Plaintiff was "*favorable for present level of functioning.*"  (Tr. 300) (emphasis added). Additionally, the ALJ found the opinion of the state agency physician, Gordon J. Rankart's, Psy. D., to be persuasive.  (Tr. 17, 302-32).  Rankart was also a specialist whose opinion should be accorded more weight.  Rankart opined Plaintiff was suffering from major depression–moderate, PTSD, poly-substance abuse in remission, but that Plaintiff has no more than mild/moderate mental limitations for the workplace.  (Tr. 305, 307, 310, 314, 330-32).

Finally, the ALJ discounted Dr. Azar's opinion that Plaintiff has serious mental symptoms, because in his own records, he indicated Plaintiff was doing "fairly well" on medication and was able to tolerate Cymbalta without any side effects after lowering the dosage.  (Tr. 17, 357-59). Furthermore, Dr. Azar expressed no limitations on Plaintiff at her most recent visit.  (Tr. 357). Additionally, in discounting Dr. Brumleve's opinion regarding Plaintiff's mental status, the ALJ cited to the fact that she received no treatment for two years and then she suddenly stated seeing a

psychiatrist in 2008.  (Tr. 16).  Thus, based on the record as a whole, Dr. Brumleve's findings are unsupported and inconsistent with the specialists' opinions.

In making her argument, Plaintiff relies on *Schnorr v. Brown*, 816 F.2d 578 (11th Cir. 1987), *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986), and *MacGregor v. Bowen*, 786 F.2d 1050, 1058 (11th Cir. 1986).  However, here unlike in *Schnorr*, the ALJ articulated a number of specific reasons for discounting the opinion of Dr. Brumleve.  *See Schnorr,* 816 F.2d 578 (finding error because the Secretary failed to present good cause for discounting the treating physician's opinions).  In the instant case, the ALJ relied on the factors the Eleventh Circuit articulated as constituting good cause including: (1) Dr. Brumleve's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) Dr. Brumleve's opinion was conclusory or inconsistent with his own medical records.  *See Phillips*, 357 F.3d at 1241.  Additionally, *Hillsman* is distinguishable because, in this case, the ALJ relied on doctors' opinions rather than his own.  *See Hillsman*, 804 F.2d 1179 (finding error because the ALJ made his own conclusions).  Finally, *MacGregor* is distinguishable because in the instant case, the ALJ properly refuted the treating physician's opinion based on the inconsistencies in the record, the evidence of record, and the conclusory nature of Dr. Brumleve's statements.  In fact, the record supports a contrary finding, as evidenced by other specialist's opinions and, therefore, *MacGregor* is inapplicable.  *See MacGregor*, 786 F.2d at 1054 (finding where the ALJ improperly refuted treating physician's testimony it must be taken as true).  Accordingly, the ALJ gave appropriate weight to the treating physician's opinion.

**B.      The ALJ Properly Considered Plaintiff's Non-Exertional Impairments in Combination.**

Plaintiff submits that each of her impairments should have been considered in combination with each other and that "the ALJ's failure to consider her non-exertional impairments such as PTSD, major depression, chronic pain in the right knee, and borderline intelligence was reversible error." (Pl.'s Mem. at 10-11). In determining disability, all impairments must be considered in combination. 20 C.F.R. § 416.923 ("[W]e will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity."). Plaintiff must be evaluated as a whole person and not in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 532-33 (11th Cir. 1993). Where there is a combination of impairments, a claimant may be found to be disabled even if none of the individual impairments alone would be disabling. *Caulder v. Bowen*, 791 F.2d 872, 880 (11th Cir. 1986).

In fact, contrary to her arguments, the ALJ did consider each of Plaintiff's conditions and considered the entire record in making his RFC determination. (Tr. 13-16). The ALJ found the following severe impairments: obesity, mild degenerative disc disease of the right knee, and depression. (Tr. 13). In discussing Plaintiff's severe impairments, the ALJ noted Dr. Azar's diagnosis of "posttraumatic stress disorder," as well as "major depression." (Tr. 14). The ALJ thoroughly discussed Plaintiff's depression in other areas of his opinion, as well, describing her depression stemming from childhood events. (Tr. 16). The ALJ discussed Plaintiff's knee pain throughout his analysis, discussing her knee surgeries and stating that her biggest problem was her knee. (*Id.*). The ALJ sufficiently discussed Plaintiff's knee pain, although he did not find her pain testimony to be credible. The ALJ did not mention, specifically, Dr. Bentley's diagnosis of "borderline intellectual functioning," but did discuss in depth Dr. Bentley's report, including

20

Plaintiff's ability to mange funds, recall one of three objects, as well as other results of the psychological tests performed. (Tr. 13-14). In his report, Dr. Bentley opined "without the benefit of intelligence testing, [Plaintiff's] cognitive functioning is estimated to fall in the borderline range." (Tr. 299). While the ALJ did not explicitly refer to borderline intelligence, it is obvious when reviewing his assessment (which was based on a thorough review of Dr. Bentley's examination) that he properly considered this issue. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("There is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision.").

In accordance with 20 C.F.R. § 416.923, it is clear the ALJ did consider the conditions in combination. In Finding 4, the ALJ stated that, "the claimant does not have an impairment or *combination of impairments* that meets or medically equals one of the listed impairments...." (Tr. 14) (emphasis added). It is clear the ALJ considered the combination issue. *See Wilson*, 284 F.3d at 1224-25 (holding the ALJ's determination contains evidence that he considered the combined effects of the impairments based on the following statement: "he did not have an impairment or *combination of impairments* listed in or medically equal to...") (emphasis added); *see also Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991) (holding the statement, "the claimant does not have an impairment or *combination of impairments* listed or medically equal to" shows the consideration of the combination issue) (emphasis added); *Wheeler v. Heckler*, 784 F.2d 1073, 1076 (11th Cir. 1986) (holding from the statement "the appellant is not suffering from any impairment or *combination of impairments* of sufficient severity" "it is clear the ALJ considered the combination issue") (emphasis added). It is clear from the record that the ALJ properly considered

each of Plaintiff's impairments in combination with each other, including her non-exertional impairments.

**C.      The ALJ Did Not Commit Reversible Error in Finding Plaintiff Could Perform Past Jobs.**

Contrary to the Vocational Expert's ("VE") testimony during the hearing, the ALJ found Plaintiff could perform past relevant work as a box assembler and fast food worker.  (Tr. 18). During the hearing, the VE testified, based on the ALJ's first hypothetical, that Plaintiff would be unable to work as a short order cook or waitress because of the mental RFC limitations, but that the production assembler job would still be available. (Tr. 35).   The second hypothetical posited by the ALJ included a sit/stand option and conformed with the ALJ's RFC assessment. (Tr. 35-36).  When a sit/stand option was added, the VE testified all of Plaintiff's prior work would be ruled out, but that a significant number of jobs exist in both the state and national economy of which Plaintiff could perform consistent with the ALJ's RFC finding.  (Tr. 35-36).  These positions included inspector, assembler,[5] and sorter.   (*Id.*).

Assuming *arguendo* the ALJ erred in finding Plaintiff could perform her past relevant work, correcting the error would not change the ALJ's conclusion because a sufficient number of jobs existed in the national economy which Plaintiff could perform.  Thus, a finding of no disability is warranted in any event.  An ALJ error is harmless where correcting the error would not change the result.  *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983); *see also Moore v. Astrue*, 256 Fed.Appx. 330 (holding remand was inappropriate when the error is harmless and that an error is

---

[5]The assembler job listed is markedly similar to Plaintiff's previous job as production assembler.  (Tr. 35-36).  Additionally, the occupations listed in the second hypothetical (which conformed with her RFC finding) were the same occupations listed under the first hypothetical in which the VE testified Plaintiff could perform her previous job as assembler.  (*Id.*).

22

harmless when correcting it would not change the outcome of the AL's decision) (citing *Patterson v. Bowen*, 799 F.2d 1455, 11459 (11th Cir. 1986); *Albright v. Comm'r of Social Sec.*, 2010 WL 2653265 at \*4 ("if examination included opinions that directly contradict the ALJ's findings, reversal would be warranted, but reversal is not necessary where the error is harmless.").  Here, if Plaintiff could not perform her past relevant work, she could perform the jobs listed by the VE and, thus, is not disabled.  "If the claimant is unable to do any past relevant work...the analysis proceeds to the fifth and last step." (Tr. 13).

At the last step of the evaluation process, the ALJ must "determine whether the claimant is able to do any other work considering her [RFC] age, education, and work experience.  If the claimant is able to do other work, she is not disabled" (Tr. 13) (citing 20 C.F.R. §§ 404.1520(g), 404.920(g)).  Based on the ALJ's second hypothetical, which incorporated the ALJ's RFC assessment, the VE testified there were three jobs Plaintiff could perform which existed in significant numbers in both the state and national economy.  (Tr. 35-36).  Based on Plaintiff's RFC, age, education, and work experience, she can do other work and is not disabled; therefore, any error was harmless making remand or reversal unnecessary.

## V.    CONCLUSION

For the reasons stated above, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination.  The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this _____7th_____ day of December, 2010.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE